## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## SAN ANGELO DIVISION

|  |  |  |
|---|---|---|
| **KAREN L. WELCH,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:05-CV-0013-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>REPORT AND RECOMMENDATION</u>

**THIS MATTER** is before the court upon Plaintiff's complaint filed March 7, 2005, for

judicial review of the administrative decision of the Commissioner of Social Security denying

Plaintiff's applications for a period of disability and disability insurance benefits and for

supplemental security income benefits under Title II and Title XVI of the Social Security Act.

Plaintiff filed a brief[1] in support of her complaint on August 10, 2005, and Defendant filed her brief

on August 25, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this

matter to the United States Magistrate Judge for report and recommendation, proposed findings of

fact and conclusions of law, and a proposed judgment.  This court, having considered the pleadings,

the briefs, and the administrative record, recommends that the United States District Judge affirm

the Commissioner's decision and dismiss the complaint with prejudice.

---

[1]     Despite the instructions of the court indicating that Social Security cases are treated
as appellate in nature, Plaintiff filed a motion for summary judgment in this case.  However, in
accordance with the scheduling order in this case, Plaintiff's memorandum of law in support of her
summary judgment and her summary judgment motion were considered as her brief in this matter.

## I.   STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on July 19, 2002, with a protective filing date of June 15, 2002, for her SSI application, alleging disability beginning November 19, 1999.[2] Tr. 19, 65-67, 324-26.  Plaintiff's applications were denied initially and upon reconsideration.  Tr. 19, 31-35, 40-43, 317-21.  Plaintiff filed a Request for Hearing by Administrative Law Judge on February 20, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on February 17, 2004.  Tr. 19, 44-45, 327-61.  Plaintiff, represented by an attorney, testified in her own behalf.  Tr. 334-58.  Carol Bennett, a vocational expert ("VE"), appeared and testified as well.  Tr. 359-60.  At the hearing, Plaintiff requested that her alleged onset date be amended to April 3, 1999.  Tr. 19.  The ALJ issued a decision unfavorable to Plaintiff on March 19, 2004.  Tr. 17-27.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that Plaintiff met the disability insured status requirements on April 3, 1999, and last met them through March 31, 2001.  He also found that Plaintiff had engaged in substantial gainful activity between April 3, 1999, and November 19, 1999.  Tr. 10.  He found that Plaintiff has "severe" impairments, including lumbar degenerative disc diease status post nucleoplasty; depression; and post-traumatic stress disorder.  Tr. 21.  He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  *Id.*  Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

---

[2]        Plaintiff later amended her onset date to April 3, 1999.  Tr. 20.

The ALJ indicated that he has considered the element of pain in assessing Plaintiff's RFC, and had evaluated her subjective complaints in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p).  Tr. 22.  He found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible.  *Id.*  In making his credibility determination, the ALJ noted that although Plaintiff testified that she experiences pain so severe as to preclude all levels of work activity, the record demonstrated that Plaintiff had continued to perform light duty work after her injury and was terminated from working in November 1999 because light duty work was no longer available.  *Id.*  The ALJ noted that this indicated that she could have worked past November 1999 had light duty work been available.  *Id.*  He also noted that physical examinations and imaging did not show any significant abnormalities until her October 2002 discogram.  *Id.*   He also noted that two Functional Capacity Evaluations ("FCE") in August and November 1999 showed Plaintiff's ability to perform light work.  *Id.*  The ALJ noted that during the August FCE, validity criteria suggested poor effort or voluntary submaximal effort, and the results were considered invalid and representative of her "minimal functional capacity."  *Id.*  He also considered Plaintiff's appointment with the Texas Workforce Commission to discuss job search and training in evaluating Plaintiff's credibility, insofar as she alleged the complete inability to engage in work activity at any exertional level.  Tr. 22-23.  He further noted that in March 2002 a treating source indicated that Plaintiff might be able to perform light duty work and that Plaintiff reported that she was unable to work due to pain and her need to take her daughter to Houston monthly for medical care.  Tr. 23.  He also noted her testimony that she drives from San Angelo to Midland for medical treatment and opined that the ability to drive several hours in a car on a frequent basis contradicted her assertions of disability. *Id.* The ALJ ultimately found that due to the inconsistencies between Plaintiff's allegations and the lack

of objective findings in the record, she had minimal credibility with regard to the severity of her pain and the severity of her mental impairments.  Tr. 24.

The ALJ found that Plaintiff could not return to her past relevant work as a restaurant manager or patient care assistant.  Tr. 19, 25.  He noted that Plaintiff was considered a "younger" person with a G.E.D., which he found to be the equivalent of a high school education.  Tr. 26; *see* 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that Plaintiff retained the RFC to perform light work activity, limited to jobs that do not require more than occasional stooping and crouching; that do offer a modified sit/stand option with the opportunity to change positions every 20 to 30 minutes; and that have a reasoning development level of 1 to 3.  Tr. 24.  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 26. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of cashier, with 7,500 jobs in Texas and 100,000 jobs nationally; hand packer, with 6,000 jobs in Texas and 100,000 jobs nationally; and assembler, with 8,000 jobs in Texas and 140,000 jobs nationally. *Id.*  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 26-27.

Plaintiff submitted a Request for Review of Hearing Decision/Order on May 5, 2004.  Tr. 15-16.  After granting a 25-day extension for the presentation of new evidence, the Appeals Council issued its opinion on January 6, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and additional evidence, it nevertheless concluded that there

was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 4-6.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 7, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 26-27.

## III.   DISCUSSION

Plaintiff claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the ALJ failed to apply the treating physician rule, failed to properly utilize the testimony of the VE, and failed to properly credit Plaintiff's testimony.

**A.      Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff argues that the ALJ erred by failing to appropriately weigh and consider the opinion of her treating physician, Dr. Ralph F. Rashbaum, who opined that Plaintiff was disabled from even light duty work.  Plaintiff further argues that the ALJ erred by failing to incorporate into his RFC assessment the limitations imposed by her mental impairment, as demonstrated by the Global

Assessment of Functioning ("GAF")[3] score on Axis V[4] of 60[5] assigned by Dr. W. Truett Smith, her treating psychologist.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

However, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)).

---

[3]     The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[4]     The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client. *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.

[5]     The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he does not give a treating source's opinion controlling weight or if he declines to give the opinion of a treating specialist any weight. Pursuant to Soc. Sec. Ruling 96-2p(July 2, 1996)("SSR 96-2p"), and 20 CFR §§ 404.1527(a) and 416.927(a), "medical opinions" are opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight. The requirement that the ALJ discuss the six factors set forth in *Newton* and 20 C.F.R. § 404.1527(d) applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank*, 326 F.3d at 620.

Plaintiff alleges that the ALJ erred by failing to give Dr. Rashbaum's opinion controlling weight and by failing to give good reasons for declining to give such opinion controlling weight in accordance with 20 C.F.R. § 404.1527(d)(2)-(6) and *Newton*, 209 F.3d at 453. Plaintiff further argues that pursuant to Social Security ruling 96-2p (July 6, 1996)("SSR 96-2p"), such opinion should have been adopted, even if it did not meet the test for controlling weight. Plaintiff argues that if the ALJ determined that the opinion of her treating physician should not be afforded controlling weight, he was required to seek clarification or additional evidence from the treating physician, pursuant to 20 C.F.R. § 404.1512(e).

Dr. Rashbaum indicated on September 26, 2002, that Plaintiff had difficulty going from a seated to a standing posture, was able to walk easily once erect, had normal toe and heel walking, had some pain with forward flexion to approximately fingertips to knees, once erect was able to extend her spine, reproduced pain with extension/rotation, had no sciatic or radicular pain, had

normal manual motor testing, had intact reflexes, and had negative sacroiliac joint signs.  Tr. 296.

His impression was disk or internal disc derangement, and he recommended a discogram at L4-L5

and L5-S1.  *Id*.  Dr. Rashbaum stated that "patient is disabled for employment, even light work."

*Id*.  However, a record dated October 2, 2003, indicates that he was trying to arrange for therapy

to rehabilitate her ability to do work and also indicated that "we have an opportunity to get this gal

back doing some type of gainful employment."  Tr. 307.  Dr. Rashbaum indicated that he was going

to continue to reduce Plaintiff's medications and try to get her into an exercise rehabilitation

program.  *Id*.  On April 10, 2003, Dr. Rashbaum indicated that Plaintiff had previously not returned

to work because her previous physician had not identified the problem.  Tr. 308.  He said "[n]ow that

we have treated the problem, we can go ahead and rehabilitate the patient."  *Id*.  After her surgery,

Dr. Rashbaum indicated on February 6, 2003, that Plaintiff should limit her sitting to 20 minutes at

a time, simply getting up after that, walking around for two or three minutes, then sit again, or sit

in a recliner for an hour or so.  Tr. 309.  He also noted that although Plaintiff reported at that time

that her pain, on a scale of one to 10, was 12, she simply sat there, her pulse rate was 82 and

sometimes irregular, and there was no diaphoresis and no dilated pupils.  *Id*.  Dr. Bashbaum

completed a Texas Workers' Compensation Work Status Report on October 2, 2003, indicating that

Plaintiff could not work, "pending rehab."  Tr. 306.

Clearly, the ALJ did not err in failing to give controlling weight to Dr. Rashbaum's statement

that Plaintiff was disabled from work, even light work activity.  This type of non-medical opinion

is accorded no special significance and need not be evaluated with the six factors described in 20

C.F.R. § 404.1527 and *Newton.  See Frank*, 326 F.3d at 620.  Plaintiff argues that the ALJ failed to

give appropriate weight to Dr. Rashbaum's opinion as to the nature of the severity of her

impairments and the limitations imposed therein.

In his opinion the ALJ noted that Dr. Rashbaum had opined in September 2002 that Plaintiff was disabled and unable to perform even light work and also noted in December 2003 that Plaintiff was unable to work pending rehabilitation. Tr. 25. The ALJ ultimately found that Plaintiff retained the RFC for a limited range of light work, except that she could only occasionally stoop or crouch; required a modified sit/stand option with the ability to change positions every 20 or 30 minutes; and was limited to jobs with a reasoning development level of 1 to 3.

The record demonstrates that Dr. Rashbaum noted on September 26, 2002, that Plaintiff was in no acute distress and exhibited no unusual pain behavior. Tr. 297. Plaintiff underwent an FCE on August 10, 1999. Tr. 186-89. The conclusion at that time was that results indicated that Plaintiff was able to work at the light physical demand level for an 8-hour day as defined in the *Dictionary of Occupational Titles.*[6] Tr. 186. However, it was opined that significant data suggested symptom magnification and disability exaggeration in an attempt to demonstrate greater disability than was actually present. Tr. 187. Therefore, it was recommended that Plaintiff return to her past work and that she not be referred for therapy, because she was previously non-compliant with therapy sessions. *Id.* A functional capacity assessment performed on November 29, 1999, indicated that Plaintiff was "currently functional at a light physical demand capacity level," where light was defined as carrying and lifting 20 pounds on a occasional basis, ten pounds on a frequent basis, and some weight constantly. Tr. 207. A December 10, 1999, progress note from her work-hardening program indicates that in an 8-hour day, Plaintiff can sit for approximately six hours with short "mini-breaks" to stand and stretch about every two hours. Tr. 240. In the course of a work-hardening program, Plaintiff reported on January 3, 2000, that sitting in a chair became uncomfortable after 30 minutes. Tr. 226. After performing an independent medical examination

---

[6] United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

on March 25, 2002, Dr. Robert Alexander opined that Plaintiff was currently unable to return to her job but might be able to do some light duty, although such would possibly require vocational rehabilitation.  Tr. 270-71.  On January 20, 2003, Dr. William A. Montgomery, an examining psychologist, reported that Plaintiff related being able to bathe and dress herself; perform all of her household chores, although it takes some time; drive once or twice a week; and cook on a daily basis.  Tr. 300-01.

The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations.  Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original).  The ALJ is responsible for determining a claimant's RFC.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  However, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician as to the limitations imposed by Plaintiff's impairments solely because he has a different interpretation of the evidence.  *See Frank*, 326 F.3d at 622 (where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments).

Here, the ALJ's RFC assessment is consistent with substantial evidence in the record, including Dr. Rashbaum's post-surgery note indicating that Plaintiff should then limit her sitting to 20 minutes at a time, and then get up and walk around for two or three minutes, and then sit again.

Tr. 309.  Plaintiff argues that the ALJ's conclusion that Plaintiff could stand or walk most of the day was reached only by ignoring the evidence.  However, the results of two FCEs indicated the ability to perform work at the light exertional level, and the work-hardening program notes indicate the ability to  sit for approximately 6 hours with short "mini-breaks" to stand and stretch about every two hours.  Tr. 185, 207, 240.   Plaintiff testified that when she worked her light duty assignment, she had to do some walking, would walk over a mile, and could walk about a block at a time.  Tr. 341. Indeed, during her work-hardening program, Plaintiff walked 1.02 miles with a maximum speed of 3.0 MPH.  Tr. 211.  On February 1, 2001, Dr. Alexander noted Plaintiff's report of walking less than a mile and reports of pain with walking, sitting, standing, lying down, and activity in general.  Tr. 279.  The results of the functional capacity assessment which indicated her "minimal functional capacity," indicated that Plaintiff would sit, stand, walk, bend, squat, kneel, and crawl at least occasionally (up to 33% of the day), could frequently reach, and should never climb or crawl.  Tr. 189.  While the ALJ clearly did not find that Plaintiff was disabled from performing work at the light exertional level, as Dr. Rashbaum had opined, his RFC assessment is consistent with substantial evidence in the record.

Plaintiff argues that if the ALJ was in doubt as to how Dr. Rashbaum supported his conclusion of disability, the ALJ was obligated to recontact the treating physician.  As noted above, the ALJ was not required to give any special significance or weight to Dr. Rashbaum's nonmedical opinion on an issue reserved to the Commissioner.  The ALJ may seek additional evidence or clarification from a claimant's  medical source when the report from that source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or it does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1512(e).  If the evidence is consistent but not sufficient to determine whether the claimant is disabled, or if after weighing the evidence the ALJ determines that he or she cannot

reach a conclusion about whether the claimant is disabled, the ALJ will try to obtain additional evidence.  20 C.F.R. § 404.1527.  The absence of such a statement, however, does not in itself make the record incomplete.  20 C.F.R. § 404.1513(b)(6).  In a situation where no medical statement has been provided, the court inquiry "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."  *Ripley*, 67 F.3d at 557.

Here, the record contains substantial evidence to support the ALJ's RFC finding.   The ALJ was not required to recontact Dr. Rashbaum where there was substantial evidence in the record upon which to determine disability and to make the RFC determination.

The record further demonstrates that the ALJ did not fail to "give *any* weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456 (emphasis supplied).  Rather, he appropriately considered the evidence in the record as a whole, including the evidence of Plaintiff's other treatment providers, Plaintiff's testimony and her reports of her activities, and the reports of the consultative examiners.

I find that the ALJ did not err by failing to appropriately consider Dr. Rashbaum's opinion as a treating physician, nor was he required to discuss each of the factors set forth in 20 C.F.R. § 404.1527(d), and he did not err by failing to recontact Dr. Rashbaum.

Plaintiff further argues that the ALJ also failed to give appropriate weight to the opinion of Dr. Smith, a treating psychologist, who opined that Plaintiff had a GAF of 60.  Plaintiff argues that the failure of the ALJ to assess no greater than mild limitations in any functional area demonstrates that the ALJ inappropriately failed to consider the GAF score assigned by Dr. Smith and incorporate such limitations in his RFC assessment and in performing the special psychiatric review technique.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R.§§ 404.1520a and 416.920a. He is required to evaluate the degree of

functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R.§§ 404.1520a and 416.920a.  *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  The ALJ must evaluate the claimant's limitations in four functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "b" criteria.  A five-point scale is used to rate the degree of limitation in the first three of those functional areas.  20 C.F.R. § 404.1520a (c)(1)-(4).  These four separate areas are deemed essential for work.  *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)).  The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding as to the degree of limitation in each of the functional areas described.  20 C.F.R. §404.1520a(e)(2).  The Psychiatric Review Technique form ("PRTF") represents one way in which such findings may be documented.  20 C.F.R. § 404.1520a(e).  After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 404.1520a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process.  20 C.F.R. § 404.1520a(c)(1).  If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00-12.09. 20 C.F.R. § 404.1520a(c)(2).  If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct a residual functional capacity assessment.  *Boyd*, 239 F.3d at 705.

Plaintiff contends that in evaluating the limitations imposed by her mental impairment and in performing the psychiatric review technique, the  ALJ erred in finding that she was not restricted in her activities of daily living; experienced mild restriction in her ability to maintain social functioning; experienced mild restriction in maintaining concentration, persistence, and pace; and had experienced no episodes of decompensation of extended duration.  *See* Tr. 24.  Plaintiff argues

that pursuant to 20 C.F.R. § 404.1520a(d)(1), "when a mental impairment is found severe, the plaintiff is deemed to have at least moderate limitations in the broad functional areas considered." Plaintiff argues that in performing the special psychiatric review technique and in making his RFC finding, the ALJ failed to incorporate at least moderate restrictions consistent with the GAF score assessed by her treating psychologist.

In fact, 20 C.F.R. § 404.1520a(d)(1) specifically provides that where the ALJ rates the degree of the claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, the Commissioner "will *generally* conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." *See* 20 C.F.R. § 404.1520a(d)(1). A finding of mild or none limitation in the identified functional areas and a finding of no episodes of decompensation does not necessitate a finding that the mental impairment is not severe, although such a finding may generally be the case. This is consistent with the interpretation of the severity regulation in the Fifth Circuit.

Under the Social Security Regulations, the severity of an impairment or impairments is considered at the second step of the five-step sequential analysis. *See* 20 C.F.R. § 404.1520. A claimant must show that he or she has a severe medical impairment before the claimant can be determined disabled. 20 C.F.R. § 404.1520(a)(4)(ii). The regulations further provide that an impairment must significantly limit the person's ability to do basic work activities in order to be considered severe. 20 C.F.R. § 404.1520(c). Thus,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, [the Commissioner] will find that you do not have a severe impairment and are, therefore, not disabled.

*Id.*

-15-

The Supreme Court held that this "severity regulation" is valid on its face and "is not inconsistent with the statutory definition of disability." *Bowen v. Yuckert,* 482 U.S. 137, 146, 154, 107 S.Ct. 2287, 2293, 2298 (1987).

The Fifth Circuit has considered the severity regulation, both before and after the Supreme Court's decision in *Bowen v. Yuckert*. In *Stone*, the Court approved of an earlier construction of the severity regulation that set this standard for determining whether a claimant's impairment is severe:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir. 1984). In *Loza v. Apfel*, the Court held that the standard set forth in *Stone* remained the correct standard. *Loza,* 219 F.3d 378 at 392. However, the Commissioner may require a claimant to make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work under this standard. *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992).

Thus, in the Fifth Circuit, the claimant need only make a *de minimis* showing that her impairment is severe enough to interfere with her ability to do work to meet the severity threshold.

In this matter, the ALJ, as noted, found that Plaintiff's mental impairment was "severe" at step 2 of the sequential evaluation process, and determine that it imposed mild limitations on certain areas of functioning. He incorporated a limitation to jobs with a reasoning development level of one to three into his RFC assessment, in light of "her GAF score of 55 in January 2003, as well as her continued pain." Tr. 24.

While Plaintiff argues that Dr. Smith's assessment of a GAF score of 60 necessarily indicates that she was moderately limited, it is important to note that the DSM-IV describes the GAF as a

useful tool for "planning treatment and measuring its impact, and in predicting outcome."[7]

However, the ALJ noted and discussed a lower GAF score of 55, as assessed by a consultative

psychological examiner, in making his RFC finding  and specifically incorporated a limitation to

reflect the GAF of 55.  The ALJ did not improperly discount the opinion of Dr. Smith by failing to

incorporate moderate limitations based on Plaintiff's mental impairment into his psychiatric review

technique or in his RFC assessment.  Dr. Smith noted that Plaintiff was obviously depressed; was

alert and oriented to time, place, and person; was not a suicide risk; and had good judgment and

adequate insight.  Tr. 199.  He also noted that testing placed her at moderate risk to develop a

chronic pain syndrome consisting of chronic pain, limiting herself more than medically indicated,

and considering herself disabled.  *Id*.  After their ninth session, Dr. Smith noted that Plaintiff

remained fragile but had improved.  Tr. 192.

In his opinion the ALJ discussed Plaintiff's treatment by Dr. Smith and noted his GAF score

of 60.  Tr. 21.  He noted Plaintiff's subsequent psychological consultative examination and GAF

score of 55.  The ALJ described Plaintiff's treatment for her mental impairment, as well as her

reports of her activities and the limitations imposed by her mental impairment.  Tr. 19-23.   Dr.

Smith's progress notes, evaluation, and reports do not indicate that Plaintiff was more limited by her

mental impairment.   He noted that Plaintiff was depressed, oriented, focused on the situation,

logical and goal directed, had intact memory and attention and concentration, and fair judgment and

insight.  Tr. 190-A.  He also opined that Plaintiff's prognosis was fair, and her ability to relate to

others and to sustain work was fair, although her ability to respond to change or stress was poor.

*Id*.  The record does not demonstrate that the ALJ improperly discounted or failed to consider the

opinions of Dr. Smith and in fact extensively discussed Plaintiff's treatment in his opinion.

---

[7]        *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV").

Moreover, Dr. Smith's GAF score does not represent a medical opinion as to specific limitations imposed by Plaintiff's mental impairment.  Rather, it represents a tool he used in the course of his treatment.  In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).  I find that the ALJ did not improperly fail to weigh and consider the opinion of Dr. Smith in determining the limitations imposed by Plaintiff's mental impairment.

Plaintiff, in a footnote, argues that the ALJ, in passing, inappropriately noted that Plaintiff had never sought treatment with MHMR and failed to obtain the December 2002 emergency room records.  She alleges that she was financially unable to obtain such treatment.  However, there is nothing in the ALJ decision to indicate that he found that Plaintiff did not comply with recommended treatment.  She further argues that the ALJ's failure to obtain the emergency room records violated his duty to develop the record.

"The ALJ has a duty 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd*, 239 F.3d at 708 (quoting *Newton*, 209 F.3d at 458).  This court may not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000)(citing *Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996)).  In order to establish prejudice, a claimant must demonstrate that he or she "could and would have adduced evidence that might have altered the result." *Carey*, 230 F.3d at 142 (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).  Here, Plaintiff has adduced no evidence to demonstrate that the records from the December 2002 emergency room visit might have altered the result. Therefore, I find no prejudice in the failure of the ALJ to obtain such records.

I find that the ALJ did not err by failing to consider the opinions of Plaintiff's treating physician and treating psychologist in making his RFC assessment, nor did he fail to fully and fairly

develop the record to require remand, nor did he err in evaluating the limitations imposed by Plaintiff's mental impairment in performing the psychiatric review technique or in determining Plaintiff's RFC.  I find that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence in the record.

**B.**     **Whether the ALJ erred in considering the testimony of the VE**.

Plaintiff argues that the ALJ erred in relying upon the testimony of the VE, who indicated the unskilled jobs identified could be performed with a "modified sit/stand option."  Plaintiff correctly notes that Social Security Ruling 83-12 (February 26, 1979)("SSR 83-12") provides in pertinent part that "[u]nskilled jobs are particularly structures so that a person cannot ordinarily sit or stand at will."  However, Plaintiff fails to take note of the next sentence which provides that "[i]n cases of unusual limitation of ability to sit or stand, a VS ["vocational specialist"] should be consulted to clarify the implications for the occupational case."  *See* SSR 83-12.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing  *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.*     In testifying, a   vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Plaintiff's argues that the VE's failure to cite to SSR 83-12 "*per se*" invalidates her testimony.  However, the ALJ did exactly what SSR 83-12 requires – he consulted with a VE and obtained expert testimony in order to determine the availability of such jobs as well as the specific occupational base.  Plaintiff's argument that the failure of the VE to cite to SSR 83-12 necessarily

invalidates her testimony is utterly without merit.  Plaintiff further points to *Scott v. Shalala*, where the Fifth Circuit noted that a sit/stand option was not compatible with sedentary level work.  *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994).  *Scott* is inapposite – that case dealt with a claimant with an RFC for a limited range of sedentary level work.  *Id.*  Here, the VE testified as to the availability of jobs at the *light exertional level* with a sit/stand option and the other limitations noted by the ALJ.  Tr. 359-60.

Plaintiff further argues that the ALJ failed in his affirmative duty to ask the VE about any possible conflict with the DOT, noting that the DOT indicates that the job of "assembler, small products," job code 706.684-022, has a specific vocational preparation level of two, consistent with unskilled work.

In *Carey v. Apfel,* the Fifth Circuit addressed a case where the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles*.  *See Carey*, 230 F.3d at 146.  The Fifth Circuit noted that "'[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed,'" and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job."  *Id.* at 145 (internal citations omitted). The Court indicated its agreement with the majority of the circuits that the ALJ may rely upon the VE's testimony, provided that the record reflects an adequate basis for doing so.  *Id.*  In this case, there is no direct conflict with the DOT.  Rather, the VE testified about the way in which jobs are performed in specific settings which was not a part of the DOT job description.  Here, Plaintiff has failed to demonstrate any actual conflict between the DOT and the VE testimony.  Rather, Plaintiff argues that "[t]he major conflict here lies between the lone

hypothetical question posed by the ALJ to the VE" and SSR 83-12.  While *Carey* deals with a conflict between the testimony of the VE and the DOT, the finding that an ALJ may rely upon VE testimony with adequate support in the record is instructive in this matter.

Plaintiff argues that there is not an adequate basis in the record for relying upon the testimony of the VE.  Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills.  *See* Soc. Sec. Ruling 00-4p (December 4, 2000)("SSR 00-4p").  This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other.  *Id.*  Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  *Id.*   However, the court is unable to find any actual conflict between the testimony of the VE and *either* SSR 83-12 or the DOT.

Plaintiff further argues that the hypothetical question posed to the VE was incomplete.  The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).  Plaintiff argues that the finding that her mental impairment was "severe" necessitates at least moderate mental limitations in the RFC assessment.  As noted previously, the severity finding at step 2 is separate from the RFC assessment.  The ALJ was only required to incorporate limitations supported by substantial evidence in the record into his RFC assessment.  The ALJ specifically found that Plaintiff's mental impairment and GAF score of 55, as well as her continued pain, limited her to work with a reasoning level of one to three, as defined by the DOT.  The ALJ appropriately incorporated such limitation into the hypothetical question posed to the VE.

Functional limitations are evaluated on the PRTF to determine the extent to which the mental impairment(s) interferes with the claimant's ability to function independently, appropriately, effectively, and on a sustained basis.  20 CFR § 404.1520a(c)(2).  "Residual functional capacity" refers to the ability to perform work despite physical or mental impairments.  20 C.F.R. § 404.1545a. While findings of impairment under the part "b" criteria would clearly be relevant to the RFC determination, a finding of such impairment at step 2 does not require that such an impairment be incorporated into the RFC finding if the ALJ finds that the impairment does not limit the claimant's ability to perform work.

Ultimately, it is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion.  *See* 20 C.F.R. §§ 416.946, 416.927(e).  The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion.  Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses.  *See Muse*, 925 F.2d at 790. The operative question, therefore, is whether the RFC assessment and the hypothetical questions posed to the VE incorporated all of the limitations resulting from Plaintiff's impairments that the ALJ accepted.  *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994)(no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).   I find that the ALJ's hypothetical question reasonably incorporated the limitations accepted by the ALJ.  I further find that the ALJ did not err in relying upon the testimony of the VE in finding at step 5 that Plaintiff could perform other work which exists in the national economy. The testimony of the VE constituted substantial evidence to support the ALJ's step 5 finding.

**C.     Whether the ALJ erred in considering Plaintiff's testimony and making his credibility assessment.**

Plaintiff argues that the ALJ failed to properly credit her testimony as to the disabling nature of her pain.  Plaintiff argues that the ALJ found that she was not credible because "she could have worked past November had light duty work been available." Tr. 22.   She argues that the ALJ failed to consider the appropriate factors as described in Social Security Ruling 96-7p.

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms.  The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The record demonstrates that the ALJ found that Plaintiff had objectively identifiable, medically determinable impairments that could reasonably be expected to produce the pain and other subjective complaints expressed.  Tr. 21-22.  The ALJ indicated that he considered Plaintiff's subjective allegations of pain, other complaints, and the functional limitations imposed therefrom in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p and found them not entirely supported by the findings of the objective medical evidence. Tr. 22.  The ALJ ultimately found that Plaintiff's subjective allegations had limited credibility.  *Id.*  Plaintiff takes issue with the grounds recited by the ALJ in his credibility finding.

First, Plaintiff correctly argues that pain may be disabling.  The ALJ noted Plaintiff's complaints of pain, such as during the November 1999 FCE and in the course of the work-hardening program she participated in.  Tr. 22-23. He correctly noted that Plaintiff reported that she was unable to work due to her pain and her need to take her disabled daughter to Houston monthly for medical care.  Tr. 23.  He noted that Plaintiff had also testified that she drives from San Angelo to Midland to see her own doctors and opined that the "ability to drive several hours in a  car on a frequent basis contradicts her assertions of disability."  *Id*.  The ALJ also noted Plaintiff's reports of her activities, including the ability to bathe and dress herself, perform household chores, cook on a daily basis, and visit with a friend.  *Id*.  He specifically noted Plaintiff's complaint of having difficulty interacting with others due to impatience from her pain.  *Id*.  He also noted the report of Plaintiff's treating physician, who indicated in a progress note that although Plaintiff reported extreme pain, she simply sat there during the interview.  *Id*.  The ALJ clearly addressed Plaintiff's activities and her own complaints of pain in making his credibility determination.  He also addressed the findings of the August and November 1999 FCEs, which *both* indicated the ability to perform work at the light exertional level.  Tr. 186, 207.  The ALJ also discussed the objective findings, including the recommendation of a discogram in November 1999 and September 2002 and the fact that imaging did not show significant abnormalities until the October 2002 discogram. SSR 96-7p notes that in making the credibility determination, the ALJ may consider "the medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work."

Plaintiff argues that the ALJ erred in noting that Plaintiff "could have worked past November had light duty work been available." Tr. 22. Insofar as Plaintiff argues that she made a "prima facie case" that her work between April 1999 and November 1999 did not constitute substantial gainful activity because she had many work excuses and doctor slips for that period, other evidence in the record indicates that Plaintiff continued to work full-time and was fired on November 19, 1999. *See* Tr. 87, 97, 333-39. Dr. L. Duarte indicated on November 16, 1999, that Plaintiff could continue to work on light duty. Tr. 151. In his opinion the ALJ specifically addressed whether Plaintiff's work between April 3, 1999, and November 19, 1999, constituted substantial gainful activities. I find that the ALJ did not err in finding that Plaintiff had engaged in substantial gainful activity between April 3, 1999, and November 19, 1999, nor did he err in considering such activity in making his credibility determination.

The ALJ is instructed to consider the entire record. SSR 96-7p. The ALJ's opinion demonstrates that he appropriately considered and discussed the record as a whole, as well as Plaintiff's specific subjective allegations as to the disabling nature of her pain in making his credibility determination. His credibility determination is supported by substantial evidence in the record.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to

object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 7th day of August, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**